BORDIN SEMMER LLP
Joshua Bordin-Wosk (State Bar No. 241077)
jbordinwosk@bordinsemmer.com
Donna Puyot (State Bar No. 305955)
dpuyot@bordinsemmer.com
Howard Hughes Center
6100 Center Driver, Suite 1100
Los Angeles, CA 90045
Phone: (323) 457-2110
Facsimile: (323) 457-2120

Attorneys for Defendant
ACOUSTICAL SHEETMETAL, INC.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GLOBAL POWER SUPPLY, LLC, | Case No.:  2:18-cv-03719-R-SK |
| Plaintiff, | |
| v. | **DEFENDANT ACOUSTICAL SHEETMETAL INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| ACOUSTICAL SHEETMETAL INC. and DOES 1 to 20, | |
| Defendants. | |
| | Hearing: |
| | Date: June 18, 2018 |
| | Time: 10:00 a.m. |
| | Location: Courtroom 880 |
| | Judge: Hon. Manuel L. Real |

REPLY IN SUPPORT OF DEFENDANT ACOUSTICAL SHEETMETAL INC.'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Global Power Supply, LLC's ("GPS" or "Plaintiff") Opposition Memorandum does not dispute that, in the absence of an enforceable forum selection clause, this Court does not have *in personam* jurisdiction over defendant Acoustical Sheetmetal Inc. ("ASI" or "Defendant") and the case would therefore need to be dismissed. GPS nonetheless spends little time analyzing the validity of the forum selection clause that they now seek to enforce.

There was no enforceable forum selection clause between GPS and ASI. There was no signed agreement containing a forum selection clause. GPS acknowledges that the parties were still negotiating terms and conditions of a purchase order. GPS insists that because an ASI executive asked that a final draft of GPS' proposed terms and conditions be prepared for him to review, that somehow demonstrates that there was a valid contract. Not so. Where parties reserve elements of a contract for future agreement, those elements are not enforceable until the final agreement as to those terms is actually completed. *Fredianelli v. Jenkins* (N.D. Cal. 2013) 931 F.Supp.2d 1001, 1016. A contract for the sale of goods over $500 is invalid unless it is in writing and signed by the parties. Cal. U. Com. Code, § 2201; Va. Code § 8.2-201. If the signed written agreement omits terms, then the contract is not enforceable beyond the quantity of goods shown in the writing. Cal. U. Com. Code, § 2201; Va. Code § 8.2-201.

GPS has admitted that the terms and conditions containing the forum selection clause was still being negotiated and was never put in final written form or signed by the parties. It is not enforceable against ASI. GPS has failed to meet its burden to show that ASI assented to the forum selection clause. As such, because GPS has not disputed that ASI lacks the minimum contacts to justify the exercise of jurisdiction, the case must be dismissed.

## II.   GPS HAS NOT MET ITS BURDEN TO SHOW THAT ASI UNEQUIVOCALLY ASSENTED TO THE FORUM SELECTION CLAUSE

"[I]t is the general rule that a contract as to its validity is to be construed according to the law of the place of contracting unless it is executed with a view to its performance in another place." *Air Transport Associates v. U.S.* (9th Cir. 1955) 221 F.2d 467, 471–472. Although the result is the same regardless of which law is applied, ASI will demonstrate in this memorandum that the forum selection clause that GPS seeks to enforce under California law is not valid and enforceable against ASI under California law. Thus, GPS' basis for asserting jurisdiction in California is without merit even under the very law it seeks to impose upon ASI.

"The general rule in California is that where any of the essential elements of a promise are reserved for the future agreement of both parties, no legal obligation arises until such future agreement is made." *Fredianelli v. Jenkins* (N.D. Cal. 2013) 931 F.Supp.2d 1001, 1016 (internal punctuation omitted). To enforce a contract, an essential element of showing that a contract existed is showing that the parties each consented to the terms of the agreement. Civ. Code, § 1550. Consent must be communicated by the party against which the contract is to be enforced. *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1221. Absent evidence that a party consented to a particular term in a contract, that term cannot be enforced against the party. *Id.* (holding arbitration agreement could not be enforced absent a showing that the party agreed to the contractual term for arbitration). To enforce the agreement, the enforcing party must show the other party's acceptance was clear and unequivocal. *Coppinger v. Rawlins* (2015) 239 Cal.App.4th 608, 614.

Mutual intent to enter into a particular contractual term is determinative. *Banner Entertainment, Inc. v. Superior Court (Alchemy Filmworks, Inc.)* (1998) 62 Cal.App.4th 348, 358–359. In order to establish assent, the plaintiff must show that

the parties "assent[ed] to the same thing, in the same sense." *Id.* If the parties have set forth how assent must be manifested, then assent in any other form is invalid. *See id.* "Thus, the failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." *Id.* Even if parties start to perform before they are in agreement as to all material terms, only those terms where both parties expressly agreed will be enforceable. *Diamond Fruit Growers, Inc. v. Krack Corp.* (9th Cir. 1986) 794 F.2d 1440, 1444.[1]

GPS readily admits that when ASI signed the purchase order, the parties agreed that the terms and conditions sheet would be subject to continued and future negotiations. Thus, the signature on the purchase order in no way evidences ASI's assent to the terms and conditions sheet or the forum selection clause in particular. Instead, GPS is left to argue that the later negotiations on those terms were so far advanced that the parties were about to finalize the agreement, and since by that time ASI had not yet asked that the forum selection clause be removed, then it should be enforced. GPS' "close enough is good enough" theory of contract acceptance is not supported by any legal authority.

GPS provides no evidence that ASI ever clearly or unequivocally assented to the forum selection clause or the terms and conditions sheet in the form attached to

---

[1] GPS intemperately accuses ASI of withholding "from this Court material evidence that was in ASI's possession" regarding this dispute. GPS cannot change the law regarding how assent is manifested and when a contract is enforceable through histrionics. It is GPS that has the burden of producing evidence to show that it has an enforceable forum selection clause. The parties simply disagree as to whether e-mails indicating uncompleted negotiations somehow constitutes clear, unequivocal manifestation of assent by ASI or a signed written contract. It is ASI's position, in accord with California law, that the e-mails do not show the formation of any enforceable contract term forum selection clause. Thus, they are effectively irrelevant to the personal jurisdiction analysis.

the Complaint. Instead, the best that GPS can muster is an e-mail from an ASI executive asking that GPS' final proposed draft be sent to him. As ASI had not yet manifested clear, unequivocal assent or consent to the forum selection clause, and had not yet signed the terms and conditions, the parties were still involved in negotiations and ASI still had every right to ask for further changes upon receiving GPS' final proposed term sheet.

By GPS' logic, contracts are finalized and enforceable whenever an attorney starts putting them into what they believe is final form. Under GPS' conception of the law, a party that has not yet even read the final draft of the contract and has not signed it still is bound by the terms because there is some unspecified cut-off in negotiations when the party must ask for a change or the term becomes enforceable. In GPS' legal realm, there is no such thing as a last-minute change of mind. Woe unto any prospective purchaser of any goods in California if GPS' standard prevails – they would be bound to all the terms of one party's proposed agreement as soon as the contract is given to them to read before final consideration, and their actual assent and signature would be merely gratuitous surplusage.  That, however, is not the law in California and GPS points to not a single case or authority that suggests that being nearly agreed to the terms of an agreement is the same thing as actually being agreed.

The *Banner Entertainment* case is instructive here. In that case, in a dispute over the enforceability of an arbitration clause, the parties had negotiated various terms and even begun partial performance, but they left other matters to be negotiated in the future. *Id.* at 360-361. As the parties were working together, they were negotiating a long-form agreement. *Id.* That long-form agreement was to be put in writing, and various drafts were exchanged. *Id.* Drafts were submitted to the defendant, but the written terms were never signed, and ultimately one of the parties informed the other that they no longer wished to work together. *Id.* The

California Court of Appeal found that the plaintiff's claim that a draft had been submitted to the defendant and there was an oral agreement could not support a conclusion that the contractual provision at issue was enforceable. *Id.* The Court found that there was no evidence that the parties agreed that oral assent would be sufficient to make the written terms enforceable, and the alleged part performance was insufficient to show assent to the specific term the plaintiff sought to enforce. *Id.* Specifically, the Court held that there was no evidence that the defendant performed its part of the agreement in reliance on the enforceability of the contract provision at issue. *Id.* As such, it was not enforceable against that party. *Id.*

III.   **GPS HAS FAILED TO SHOW A SIGNED WRITTEN AGREEMENT CONTAINING A FORUM SELECTION CLAUSE**

If the parties agree to work together but reserve elements of their contractual arrangement to future negotiation, the parties are not bound to the agreement until the parties have, in fact, agreed to the further terms. *Fredianelli*, 931 F.Supp.2d at 1016. If a contract must be signed to be effective, it is not enforceable until it is signed. *Id.* "[W]here the parties intend to reduce their agreement to writing there is no binding agreement between the parties until a written contract is signed." *C. L. Smith Co. v. Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 742. A written agreement that is left unsigned is not effective and may not be enforced against the non-signing party. *Id.* A contract for the sale of goods over $500 must be in writing and signed by the parties. Cal. U. Com. Code, § 2201; Va. Code § 8.2-201. If the signed written agreement omits terms, then the terms of the alleged contract are not enforceable beyond the quantity of goods shown in the writing. Cal. U. Com. Code, § 2201; Va. Code § 8.2-201. Any alleged agreement that does not comply with the requirement of a signed writing – such as an alleged oral agreement – is voidable at any time by the election of either party. *Sousa v. First Cal. Co.* (1950) 101 Cal.App.2d 533, 539.

As discussed above, there was no final meeting of the minds and no final agreement on the terms and conditions, including the alleged forum selection clause. Thus, there can be no contract. GPS' reliance on the terms and conditions document attached to their Complaint and filed with their Opposition – which is obviously a draft and contains notes, strike-outs, and negotiating comments between the parties – further must fail because GPS cannot show that the parties ever put the agreement into a final writing that was signed by ASI. The signature on the purchase order is immaterial – it is undisputed that the parties intended to thereafter negotiate over the terms and conditions document. All that GPS can produce is a marked-up draft that the parties had exchanged, and a request from ASI that a clean copy of GPS' proposed draft be sent to them. Even if one assumes that the parties had reached the stage of final review before signature, the fact remains that the final review had not been completed and a signature was not affixed by ASI. Under the terms of the Uniform Commercial Code, absent a signed writing, terms and conditions other than quantity (and price) are unenforceable. Cal. U. Com. Code, § 2201. GPS cannot rely on the unsigned terms and conditions, bearing telltale signs of an ongoing negotiation, as an enforceable agreement subjecting ASI to a forum selection clause.

## IV.   GPS' CITED CASES PROVIDE NO SUPPORT FOR GPS' ATTEMPT TO ENFORCE AN UNSIGNED TERMS AND CONDITIONS DOCUMENT THAT ASI NEVER ASSENTED TO

GPS attempts to overcome the problem of the UCC's requirement of a signed writing by pointing to cases that indicate that unsigned parts of a contract will still be enforceable if the contract as a whole is signed. None of the cases cited by GPS involve the same factual circumstances as in this case. In *Elbert v. Los Angeles Gas Co.* (1893) 97 Cal. 244, an employment case from 70 years prior to the enactment of the UCC in California, the issue was whether a series of memos

and telegrams all sent as part of one employment offer and agreement were sufficient to satisfy the statute of frauds. The Court found that they were sufficient because they were all so connected to each other as to be part of a single document. *Id.* at 246. *Elbert* did not involve a sale of goods situation where the parties explicitly stated that they would continue negotiations over terms and conditions and those terms were being negotiated. *See id.* In this case, the unsigned, unfinalized terms and conditions cannot be connected to the signed purchase order because, as GPS admits, the parties explicitly agreed that the signature on the purchase order would be followed by negotiation over the separate terms and conditions document. *Elbert* provides no support for GPS and does not suggest that a signature on one agreement can become a binding signature on all future agreements the parties may later negotiate.

The *Frost v. Alward*, (1917) 176 Cal. 691, another case cited by GPS – from 46 years before the UCC was enacted in California – involved a situation where two separate written agreements were <u>both</u> signed by the parties. The question was whether both signed agreements were considered part of the same agreement. *Id.* at 693. This case does not involve a similar question – there are not two signed agreements, and the terms and conditions document that GPS seeks to enforce was not agreed to and not signed by ASI.

*Sterling v. Taylor*, (2007) 40 Cal.4th 757, does not help GPS at all, as in that case the California Supreme Court found that the terms in dispute were not sufficient to satisfy the statute of frauds and the contract term in dispute was not enforceable. The section of the case cited by GPS simply points out that if a term is in the *signed* writing, then it is enforceable even if it is not entirely clear, if extrinsic evidence can clear up the meaning. *Id.* at 771. This case does not involve the question of what a term in an agreed-upon, signed writing means. In this case, the term at issue is not contained in an agreed-upon, signed writing. *Sterling* says

nothing about this case, other than reiterating that if the parties do not comply with the statute of frauds, the alleged agreement is unenforceable.

*Karl v. Jebien* (1965) 231 Cal.App.2d 769, merely addressed whether several pages of an agreement that were all entered into at the same time were all enforceable even if not all pages were signed. The Court held that the signature on one page was sufficient for all the pages. *Id.* at 773. The situation here involves an explicit understanding between the parties after a separate purchase order had been signed that a terms and conditions document would be subject to future negotiation and would have to be agreed to separately. The terms and conditions document at issue here is not merely a page stapled to the signed document – it is rather plainly a separate document that was subject to separate negotiations beyond mere price and quantity, and had not been finalized and was not signed by ASI. None of the cases cites by GPS is apposite here.

The statutory and common law principles under California law affirm that in order for GPS to enforce the forum selection clause against ASI, GPS must show that ASI clearly and unequivocally agreed to the forum selection clause, that it was put in a final writing, and that it was signed by ASI. GPS has not met any of those prerequisites, and thus has not met its burden to show an enforceable forum selection clause. As GPS in no way disputes ASI's jurisdictional contacts analysis, the failure of GPS' forum selection clause argument means that ASI's motion to dismiss for lack of personal jurisdiction should be granted.

///
///
///
///
///
///

1

## V.  CONCLUSION

2

3   For all the reasons set forth above, and in its moving papers, defendant ASI
respectfully requests that the Court grant the Motion to Dismiss and enter an order

4   dismissing this case and the Complaint against ASI for lack of personal jurisdiction

5   pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

6   Respectfully submitted,

7

8   Dated: June 4, 2018                                Respectfully submitted,

9                                                                BORDIN SEMMER LLP

10

11                                                              By: */s/ Joshua Bordin-Wosk*
                                                                     Joshua Bordin-Wosk
12                                                                  Donna Puyot
                                                                     Attorneys for Defendant
13                                                                  ACOUSTICAL SHEETMETAL
                                                                     INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28